# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

)
OMAR JORGE MONTESINOS OLIVAR,                )
                                             )   Case No. 1:26-cv-11102-ADB
        Petitioner,                          )
                                             )
v.                                           )
                                             )
DAVID T. WESLING, Acting Boston Field Office )
Director, U.S. Immigrations and Customs      )
Enforcement, ANTONE MONIZ, Superintendent    )
of Plymouth County Correctional Facility,    )
TODD LYONS, Acting Director, U.S.            )
Immigrations and Customs Enforcement,        )
and MARKWAYNE MULLIN[1], U.S. Secretary      )
of Homeland Security,                        )
                                             )
        Respondents.                         )
                                             )

## MEMORANDUM IN SUPPORT OF PETITIONER'S MOTION TO ENFORCE JUDGMENT

### I.    INTRODUCTION

Despite this Court's Order that Petitioner be provided with a fair opportunity to apply for release, Petitioner Omar Jorge Montesinos Olivar ("Petitioner" or "Mr. Montesinos Olivar") remains unlawfully detained by Respondents at the Plymouth County Correctional Facility. On March 26, 2026, Mr. Montesinos Olivar was denied bond by the Immigration Judge ("IJ") in a hearing that did not comply with the Due Process Clause of the Fifth Amendment of the United States Constitution, the standards established in *Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021), and this Court's Order dated March 16, 2026. Exh. 1, Bond Denial; ECF No. 8.

---

[1] On March 24, 2026, Markwayne Mullin replaced Kristi Noem as U.S. Secretary of Homeland Security. As such, Secretary Mullin has automatically replaced former Secretary Noem for purposes of this Petition under Federal Rule of Civil Procedure 25(d).

1

Despite Mr. Montesinos Olivar's approximately 24 years in the United States, his demonstrated community ties, his eligibility for immigration relief, his access to *pro bono* legal counsel, and his lack of recent criminal convictions, the IJ denied Mr. Montesinos Olivar bond on the grounds that he is a flight risk. Exh. 1, Bond Denial. Her reasoning rested solely on the fact that Mr. Montesinos Olivar was arrested by ICE in Maine, which is "3 states away" from his residence in New York. Exh. 2, Bond Hearing Transcript. Although Mr. Montesinos Olivar's declaration clearly stated that he was "detained by ICE with [his] coworkers while on a roofing jobsite in Auburn, Maine," the IJ found his ICE arrest in Maine to result in "contradictory evidence on the record" regarding "where he will live and attend his hearing. This nonexistent contradictory evidence resulted in risk of flight so high that no amount of bond could ameliorate that risk, and the IJ outright denied the opportunity for release. Exh. 2, Bond Hearing Transcript; Exh. 3, Tab B, Petitioner's Declaration.

The IJ's failure to properly allocate the burdens of proof, her failure to consider alternatives to detention, and her decision to outright deny bond based on an inaccurate representation of the record was so arbitrary and capricious that it violated Mr. Montesinos Olivar's due process rights. Mr. Montesinos Olivar therefore respectfully requests that this Court enforce its Order and grant his release. In the alternative, Petitioner asks for this Court, pursuant to its equitable powers, to release Mr. Montesinos Olivar on alternatives to detention such as GPS monitoring, or grant any other relief that the Court sees fit.

## II.    <u>FACTUAL AND PROCEDURAL HISTORY</u>

### <u>Petitioner's Life in the United States</u>

Petitioner Omar Montesinos Olivar is a 41-year-old native of Mexico who entered the United States in June 2002, at the age of 17. Mr. Montesinos Olivar fled Mexico because of the

violence that he experienced at the hands of gangs and other criminal groups. Exh. 3, Tab B. He entered the United States without inspection and never encountered immigration officials until his arrest and detention in January 2026. Exh. 3, Tab B. Mr. Montesinos Olivar has lived his entire adult life in upstate New York. When he entered the United Stated in 2002, he settled in Middletown, NY, where he lived for several years before moving to Rochester, NY. Exh. 3, Tab B. Mr. Montesinos Olivar has many friends and family in the United States, in addition to family in Mexico, who wrote 12 detailed letters to the Court attesting to his character and community ties, and pledging to support him in complying with all future immigration requirements upon release. Exh. 3, Tabs D-O, Letters of Support.

Throughout his decades in upstate New York, Mr. Montesinos Olivar has developed a rich network of friends and neighbors, building trust and good will with the people that he dealt with on a regular basis. He has a stable residence in Rochester, NY with his employer and friend, Alfonso Tlazola Sanchez, with whom he has worked with for more than 6 years. He has previously lived with Mr. Tlazola Sanchez and his wife, and has a close and trusting relationship with the entire family. Exh. 3, Tab E. Mr. Tlozola Sanchez confirmed that, upon release, Mr. Montesinos Olivar can return to his employment with his company, Superior Homebuilder, Inc., and continue his work as a roofer. Mr. Tlazola Sanches confirmed that Mr. Montesinos Olivar is "responsible, hardworking, and honest." Exh. 3, Tab D. In addition, Mr. Montesinos Olivar's former employer provided a letter of support. Mr. Montesinos Olivar worked for Mr. Jeffrey Cline, a U.S. Citizen, as a roofer and carpenter for "many years," and Mr. Cline described him as "calm and respectful" and "an asset to the United States." Exh. 3, Tab I.

Mr. Montesinos Olivar's sponsor is Roberto Cazares, a U.S. Citizen and close friend of many years who has committed to offering Mr. Montesinos Olivar any necessary support to ensure his stability and court appearances. Exh. 3, Tab D.

Further, Mr. Montesinos Olivar filed a Form I-589 application for asylum and other fear-based relief. Exh. 3, Tab C. This application is based on the violence and threats he experienced at the hands of various criminal organizations in Mexico and his reasonable fear of harm should he be forced to return. Exh. 3, Tab B.

Mr. Montesinos Olivar has not been arrested or charged with any criminal conduct for more than 10 years. His two arrests were for conduct that occurred on August 2006 and September 2015. On August 10, 2006, Mr. Montesinos Olivar was arrested in Goshen, NY and charged with Driving While Intoxicated, a misdemeanor charge, and related traffic offenses (non-criminal). Exh. 5, DHS Evidence. Mr. Montesinos Olivar attested that he does not recall speaking to a lawyer about the immigration consequences of these charges, so he pled guilty, promptly paid the required fine; and complied with all court instructions. Exh. 3, Tab B.  On September 27, 2015, he was arrested in Middletown, NY and pled guilty to Resisting Arrest, a misdemeanor offense. Exh. 5. As with the initial offense, he does not recall speaking to an attorney about the immigration consequences of a guilty fee, so he pled guilty and he promptly paid the required fine. Exh. 3, Tab B. Mr. Montesinos Olivar has not been arrested or charged with any additional crimes since 2015.

On January 22, 2026, Mr. Montesinos Olivar was stopped by federal agents and placed in the custody of Immigration and Customs Enforcement ("ICE"). On March 4, 2026, Petitioner, through undersigned counsel, filed a petition for writ of habeas corpus to request the Immigration Court provide him with a bond hearing. ECF No. 1. On March 16, 2026, this Court

4

ordered Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a). ECF No. 8.

### Petitioner's Bond Hearing

On March 26, 2026, the IJ held a bond hearing for Petitioner. In advance of the hearing, Mr. Montesinos Olivar, through *pro bono* counsel, submitted significant evidence mitigating his risk of flight. Exh. 3, Tabs A-Q. Such evidence included a detailed sworn declaration from Mr. Montesinos Olivar attesting to his 24 years of residence and employment in the United States, his familial and community ties in upstate New York, his financial and emotional support for his mother and younger sisters, his commitment to attending all future court hearings, and his fear of return to Mexico. Significantly, this declaration included details of the recent ICE arrest: "I was detained by ICE with my coworkers while on a roofing jobsite in Auburn, Maine." Exh. 3, Tab B.

Mr. Montesinos Olivar provided letters of support from his U.S. citizen sponsor, a close friend of many years. Exh. 3, Tab D. In addition, he provided a letter from his friend and boss, Alfonso Tlazola Sanchez, who confirmed that Mr. Montesinos Oliver would be living with him and his family in Rochester, NY; that Mr. Montesinos has been employed with his company as a roofer or more than six years, and that his employment would continue upon his relief. Exh. 3, Tab E.

Mr. Montesinos Olivar submitted an additional 10 detailed letters of support from other family and friends, including the following:

His former boss, U.S. citizen Jeffrey D. Cline, confirms this upstanding moral character and impeccable work ethic after employing Mr. Montesinos Olivar for approximately 15 years. Exh. 3, Tab I.

His friend and former neighbor, U.S. citizen Ivan E. Medina, attests to the important role that Mr. Montesinos Olivar played in his family's life. Mr. Montesinos Olivar lived next door to Mr. Medina's parents for approximately 20 years in Middletown, New York. Mr. Medina and his twin brother served in the military and were deployed as part of Operation Iraqi Freedom. Mr. Montesinos would help Mr. Medina's parents with projects around the house and provide emotional support while their sons were overseas. In November 2003, Ivan's twin brother was killed in Iraq. As soon as he heard the news, Mr. Montesinos Olivar went to the Medina's house to comfort them. Mr. Medina writes that "[h]e kept them company every day after work in our time of need till my sister and I could get there. Even after I left to go back to active duty, he kept making sure my parents were okay as much as they could be after such a tragedy." Exh. 3, Tab K.

His younger sister, Diana Montesinos Olivar, submitted a letter from her home in Mexico She explains, in powerful terms, that his employment in the United States is necessary to support his family. Mr. Montesinos Olivar has "worked tirelessly to ensure that [they] never lack for necessities" and that includes her education expenses. Exh. 3, Tab H. In addition, his aunt, Mayte Olivar Marin, explains that his ongoing employment in the United States is vital for his mother, "a single parent who suffers from diabetes." Mr. Montesinos Olivar "covers all of his mother's expenses – including all the medications she requires." Exh. Tab O.

Mr. Montesinos Olivar also submitted proof of his pending asylum application with the Immigration Court. Exh. 3, Tab C.

In opposition to Mr. Montesinos Olivar's request for bond, the Department of Homeland Security ("DHS") submitted an I-213 record detailing Mr. Montesinos Olivar's immigration

6

history, as well as court dockets and police reports pertaining to his old arrests from 2006 and 2015. Exh. 4, I-213; Exh. 5, DHS Bond Evidence.

At the bond hearing, DHS argued that Mr. Montesinos Olivar posed both a danger and flight risk, based on the old charges from 2006 and 2015, his illegal entry, his lack of "any significant ties to the community" and the recency his asylum filing. Exh. 2.

After hearing from Mr. Montesinos Olivar and DHS, the IJ asked one question: "He was arrested in Maine – what was he doing in Maine?" Exh. 2. In determining that Mr. Montesinos Olivar was a flight risk, her analysis was limited to the following: "The I-213 indicates that he was arrested in Auburn, Maine. Counsel has indicated that he will live in New York and has previously lived in New York, so it's unclear … there's contradictory evidence on the record … um … show that the respondent … [pause] … where he will live and attend his hearing." Exh. 2. The IJ reached the conclusion that there was "contradictory evidence on the record" despite the Petitioner's uncontradicted evidence of his residence and employment in New York, as well as his sworn declaration, in which he explained that he was in Maine on a roofing job. Exh. 3.

In her oral decision, the IJ did not consider any other factors that influenced her finding of flight risk, nor did she credit the copious positive equities detailed in the Petitioner's bond evidence. *See* exh. 3. The IJ denied bond, finding DHS had met its burden of proving Mr. Montesinos Olivar posed a flight risk and "that there is no bond amount that will mitigate his risk of flight." Exh. 2.

## III.   ARGUMENT

### A.  This Court has Jurisdiction to Decide Petitioner's Motion to Enforce

Federal district courts have jurisdiction to order the release of any person who is held in custody in violation of the laws or Constitution of the United States. 28 U.S.C. § 2241(c). "A

district court retains jurisdiction to 'review compliance with its earlier order conditionally granting habeas relief,'" and federal courts have repeatedly considered whether an immigration judge complied with its prior order requiring that the immigration judge hold a constitutionally adequate bond hearing. *Diaz Ortiz v. Smith*, 384 F. Supp. 3d 140, 142 (D. Mass. 2019) (citing *Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011)); *see also Li v. Wesling,* 1:26-cv-11601-BEM, Doc. No. 10 (D. Mass April 9, 2026); *Felice Tsheta Miti v. Moniz*, No. 26-11327-BEM, 2026 WL 884639 (D. Mass. Mar. 31, 2026); *Picado v. Hyde*, No. 26-CV-065-JJM-PAS, 2026 WL 352691, at *1 (D.R.I. Feb. 9, 2026); *Mendez Trigueros v. Guadian*, No. 1:26-cv-205, Doc. 13, at 5 (E.D. Va. Feb. 18, 2026); *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227 (W.D.N.Y. 2019); *Enoh v. Sessions*, No. 16-CV-85-LJV, 2017 WL 2080278 (W.D.N.Y. May 15, 2017); *see also Shillitani v. United States*, 384 U.S. 364, 370 (1966) ("[C]ourts have inherent power to enforce compliance with their lawful orders …."). Courts in the First Circuit routinely order immediate release or new bond hearings in cases where it has concluded that a noncitizen was denied bond "because the Immigration Court failed to apply the correct legal standards." *See, e.g.*, *Gomes v. Hyde*, 804 F. Supp. 3d. 265, 278 (D. Mass. 2025) (citing *Hernandez-Lara*, 10 F.4th at 46); *Doe v. Tompkins*, 11 F. 4th 1, 2 (1st Cir. 2021); *Brito v. Garland*, 22 F.4th 240, 256-57 (1st Cir. 2021); *see also  Li v. Wesling,* 1:26-cv-11601-BEM, Doc. No. 10 (D. Mass April 9, 2026); *Miti v. Moniz*, No. 26-11327-BEM, 2026 WL 884639; *Costa v. McDonald,* No. 25-CV-13469-AK, 2026 WL 371198 (D. Mass. Feb. 10, 2026).

Federal courts generally do not have jurisdiction to review "discretionary judgment[s] regarding the application of" 8 U.S.C. § 1226. 8 U.S.C. § 1226(e). *See also Demore v. Kim*, 538 U.S. 510, 518–22 (2003). Notwithstanding 8 U.S.C. § 1226(e), federal courts may consider three types of arguments. *Miti*, No. 26-11327-BEM, 2026 WL 884639 at *4. **First**, courts may

consider habeas petitions arguing that a detainee's due process rights were violated. *See id.* ("The Court's task is therefore simply to ascertain whether the immigration court's discretion was exercised in a manner consistent with due process"); *Hernandez-Lara*, 10 F.4th at 28. **Second**, courts may review whether "the exercise of discretion in denying bond was so arbitrary that it would offend fundamental tenets of due process." *See Diaz Ortiz*, 384 F.Supp.3d at 144 (citation omitted). **Third**, courts may also consider petitions arguing that the type of evidence presented at a bond hearing "'could not – as a matter of law – have supported' the immigration judge's decision to deny bond." *Id*. at 143 (quoting *Hechavarria*, 358 F. at 240); *see also Henry v. INS*, 74 F.3d 1, 4 (1st Cir. 1996) ("Adjudicatory tribunals can exceed grants of discretion – even ringing grants of broad, essentially standardless discretion . . . by attaching weight to a factor that does not appropriately bear on the decision.").

Here, Mr. Montesinos Olivar was denied a constitutionally-compliant bond hearing because the IJ failed to allocate the proper burdens of proof, the IJ's exercise of discretion was arbitrary and capricious, and the IJ failed to meaningfully consider less restrictive alternatives to detention. This "is precisely the type of constitutional claim that belongs in federal court." *Higiro v. Nessinger*, No. 26-cv-00105-JJM-AEM, Doc. 8 at 9 (D.R.I. Mar. 13, 2026).

Administrative exhaustion is not required in this case. Mr. Montesinos Olivar is detained by Respondents, and every day in detention is a loss of liberty which causes him irreparable harm. To be sure, district courts have repeatedly held that administrative exhaustion is not required where the petitioner is actively detained in ICE custody. *See, e.g., Miti*, No. 26-11327-BEM, 2026 WL 884639 at *5; *Costa v. McDonald,* No. 25-CV-13469-AK, 2026 WL 371198 at *3 (D. Mass. Feb. 10, 2026); *Romero v. Hyde*, 795 F. Supp. 3d 271, 280 (D. Mass. 2025). "This loss of liberty is further compounded due to the considerable amount of time—up to six months,

9

in many cases—it takes for the BIA to decide bond appeals." *Picado v. Hyde*, No. 26-CV-065-JJM-PAS, 2026 WL 352691 at *6 (D.R.I. Feb. 9, 2026); *see Miti*, No. 26-11327-BEM, 2026 WL 884639 at *5.

Additionally, an administrative appeal would be futile in this case, because the Board of Immigration Appeals asserts that all persons present in the U.S. without having been admitted or inspected are ineligible for bond under 8 U.S.C. § 1225(b)(2). *See Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025); *see also Rosa Pineda v. Nessinger*, No. 1:25-CV-522-MSM-AEM, 2025 WL 3267328, at *1 (D.R.I. Nov. 24, 2025).

Finally a circuit court appeal of a BIA decision is not available for custody redetermination proceedings; thus "a petition for a writ of habeas corpus, filed in the appropriate district court, is the only mechanism by which a noncitizen may seek judicial review of an IJ's bond decision." *Mayancela Mayancela v. FCI Berlin*, No. 25-cv-348-LM-TSM, 2025 WL 3215638, at *4 (D.N.H. Nov. 18, 2025) (citations omitted). Therefore, this Court has jurisdiction to review this Motion.

**B. Petitioner Should Be Released Because His Bond Hearing Did Not Comport with Due Process.**

    **1. The IJ did not properly allocate burdens of proof in compliance with *Hernandez-Lara*, as required by this Court.**

In bond proceedings within the First Circuit, the government bears the burden to prove that an applicant poses a danger to the community by clear and convincing evidence or a flight risk by a preponderance of the evidence. *Hernandez-Lara*, 10 F.4th at 41; *see also Brito v. Garland*, 22 F.4th 240, 246 (1st Cir. 2021); *Doe v. Tompkins*, 11 F. 4th 1, 2 (1st Cir. 2021). Here, the government did not meet its burden on either prong.[2] Nevertheless, the IJ unreasonably found

---

[2] The IJ found that Mr. Montesinos Olivar did not pose a danger to the community by clear and convincing evidence.

10

that the Petitioner posed a flight risk by a preponderance of the evidence, such that no amount of bond could ameliorate that risk. Exh. 1.

The District Court has authority to enforce its decision when the Petitioner has demonstrated the IJ has failed to properly allocate the burden of proof, either by pointing to the language of the IJ's order, or by showing that the evidence itself, as a matter of law, could not have supported the IJ's decision to deny bond. *Diaz Ortiz*, 384 F.Supp.3d at 143, citing *Hechavarria*, 358 F. at 240; *see also Rosa v. Garland*, 114 F.4th 1, 14-15 (1st Cir. 2024) (finding court has jurisdiction to review immigration agency decisions concerning whether it followed binding precedent).

First, the plain language of the IJ's written order denying bond does not clearly demonstrate whether the IJ properly allocated the burden of proof to the government; instead, it simply states, "the Respondent is a flight risk by a preponderance of the evidence and there is no bond that will mitigate risk of flight." Exh. 1. However, the application of legal standards requires more than just a statement; the legal standard must be meaningfully applied. *Akinsanya v. Garland*, 125 F.4th 287, 297 (1st Cir. 2025) ("Merely stating the proper standard does not discharge the obligation to correctly apply the standard"). Furthermore, the IJ did not provide any information in her oral decision to indicate that the burden of proof of properly allocated. Exh. 3.

Moreover, DHS did not submit sufficient evidence to rebut the evidence submitted by Mr. Montesinos Olivar in support of his application for bond. DHS submitted an I-213 record, as well as police records and court documents from the 2 old arrests in 2006 and 2015. *See* Exhs. 4&5. In contrast, Mr. Montesinos Olivar submitted 12 letters of support, including confirmation of residence in Rochester, NY; confirmation of long-term employment in Rochester, NY; and

multiple affirmations of his kind, generous, hardworking and responsible nature. He also

submitted proof of his *prima facie* eligibility for immigration relief, specifically fear-based relief

based on a pending Form I-589. Exh. 3, Tab C. Significantly, he also submitted a detailed sworn

affidavit that explained, among other things, that he was detained by ICE in Maine while there at

a worksite for his employment with Mr. Tlazola Sanchez. See Exh. 3.

At argument, DHS did not address or rebut any of this evidence, other than a cursory

mention of his lack of community ties and the recency of his I-589 filing. The evidence provided

by DHS, as a matter of law, could not have supported the denial of bond. Nor did the IJ reference

that evidence in her written or oral finding of flight risk.

Therefore, DHS demonstrably failed to meet its burden of proving that Mr. Montesinos

Olivar is a flight risk by a preponderance of the evidence that no amount of bond or alternative to

detention could ameliorate. An IJ errs where they do not conduct an individualized balancing test

according to the factors articulated in *Matter of Guerra*. *Miri v. Bondi*, No. 5:26-CV-00698-

MEMF-MAR, 2026 WL 622302 at *7-9 (C.D. Cal. Mar. 5, 2026). Nevertheless, the IJ did just

that and found DHS had met their burden without meaningful analysis of the substantial

evidence submitted by Mr. Montesinos Olivar. The evidence submitted by DHS was insufficient

as a matter of law to support this conclusion. Accordingly, the IJ's reliance on such insufficient

evidence violated Mr. Montesinos Olivar's due process rights. *See, e.g., I.G.S. v. Nessinger*, No.

25-cv-339-MRD-PAS, slip op. at 2-4 (D.R.I. Sept. 12, 2025); *Garcia v. Hyde*, No. 25-CV-585-

JJM-PAS, 2025 WL 3466312 at *9 (D.R.I. Dec. 3, 2025); *Mendez Trigueros v. Guardian*, 1:26-

cv-00205-AJT-WBP, Doc. 13 (E.D. Va. Feb. 18, 2026); *Bermeo Sicha v. Bernal*, No. 1:25-cv-

00418-SDN, 2025 WL 2494530, at *4 (D. Me. Aug. 29, 2025)).

### 2. The IJ's exercise of discretion in denying bond was so arbitrary and capricious that it violated fundamental tenets of due process.

The immigration judge's decision to deny bond based solely on Mr. Montesinos Olivar's presence in Maine was so lacking in evidentiary connection to current flight risk that it rendered the bond determination arbitrary and capricious, and thus violated due process. A constitutionally-compliant bond hearing requires that the considerations relied upon to determine whether bond is warranted have a clear "evidentiary connection" to the determining criteria of danger to the community or flight risk. *Mendez Trigueros v. Guadian*, No. 1:26-cv-205, Doc. 13, at 5 (E.D. Va. Feb. 18, 2026). As the court explained in *Mendez Trigueros*, where "the considerations upon which it was determined that Petitioner constitutes a flight risk were so lacking in probative value as to that issue that their use in determining flight risk failed to provide the Petitioner with constitutionally sufficient due process," the Petitioner is entitled to a new, constitutionally-compliant bond hearing. *Id.* at 6–7.

Notably, the BIA has recognized a non-exhaustive list of factors relevant to a bond determination, including whether the noncitizen has a fixed address in the U.S., length of residence and family ties in the United States, employment history, record of appearance in court, and criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses. *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006). Importantly, the recency of the conduct at issue is an explicit consideration under the *Guerra* factors.

As addressed *supra*, Mr. Montesinos Olivar submitted evidence addressing numerous factors laid out in *Guerra*. The only evidence DHS pointed to for flight risk was the mere presence of Mr. Montesinos Olivar in the state of Maine. Exh. 1. This decision can only be described as so arbitrary that it violated Mr. Montesinos Olivar's due process rights. *See Diaz*

*Ortiz*, 384 F.Supp.3d at 144; *see also Mendez Trigueros v. Guardian*, 1:26-cv-00205-AJT-WBP, Doc. 13 (E.D. Va. Feb. 18, 2026) (finding that considerations IJ relied on in making flight risk determination failed to provide petitioner with sufficient due process). It is legal error for the IJ to "fail to mention highly probative or potentially dispositive evidence," even if the IJ's decision contains a "catchall phrase" asserting that they reviewed the entirety of the evidence. *Martinez v. Clark*, 124 F.4th 775, 785 (9th Cir. 2024) (citing *Cole v. Holder*, 659 F.3d 762, 771-72 (9th Cir. 2011)). "While the IJ 'need not discuss *ad nauseam* every piece of evidence,' they 'may not simply ignore substantial testimonial and documentary proof.'" *Garcia v. Hyde,* 2025 WL 3466312, at *1 (citing *Barnica-Lopez v. Garland*, 59 F.4th 520, 530 (1st Cir. 2023); *Pan v. Gonzales*, 489 F.3d 80, 87 (1st Cir. 2007)). The IJ must give "reasoned consideration to the evidence as a whole, [make] supportable findings, and adequately explain[ ] [their] reasoning." *Garcia v. Hyde,* 2025 WL 3466312, at *1 (quoting *Pan*, 489 F.3d at 87).

Here, the IJ gave no consideration to crucial evidence in favor of Mr. Montesinos Olivar. Namely, the IJ did not note that Mr. Montesinos Olivar specifically states in his declaration that he was arrested by ICE in Maine while working on a roofing job. Exh. 3, Tab B. The IJ did not acknowledge Mr. Montesinos Olivar's sworn testimony to attend all future court hearings, or the written testimony of friends and neighbors - including his U.S. citizen sponsor - who committed to supporting him in attending all future immigration appointments. The IJ did not mention that Mr. Montesinos Olivar has *pro bono* legal counsel supporting him in his proceedings who could ensure his future compliance. While the IJ did not overtly dispute his fixed address in New York, including letters from long-term neighbors, or his long history of employment with the same company in New York, she incorrectly stated that there was "inconsistent information in the record" as to where he would attend his immigration hearings, despite the wholly consistent

14

record. Further, as addressed fully below, the IJ gave no mention to the effectiveness of alternatives to detention to assure Mr. Montesinos Olivar's return to court.

The utter lack of coherent reasoning by the IJ rendered her bond determination arbitrary and capricious, and thus violated Mr. Montesinos Olivar's due process rights.

### 3. The IJ failed to consider alternatives to detention in her analysis of flight risk.

An IJ's failure to consider alternative conditions of release in a bond determination is a violation of an individual's due process rights. *See Costa v. McDonald,* No. 25-CV-13469-AK, 2026 WL 371198 (D. Mass. Feb. 10, 2026); *Brito v. Barr*, 415 F. Supp. 3d 258, 267-71 (D. Mass. 2019), aff'd in part, vacated in part, 22 F.4th 240 (1st Cir. 2021); *Reid v. Donelan,* 390 F. Supp. 3d 201, 225 (D. Mass. 2019); *see also Hernandez v. Sessions*, 872 F.3d 976, 990–91 (9th Cir. 2017) ("Is consideration of . . . possible alternative release conditions [] necessary to ensure that the conditions of their release will be reasonably related to the governmental interest in ensuring their appearance at future hearings? We conclude that the answer is yes."). Courts recognize that alternatives to detention, such as GPS monitoring or check-ins, are proven to be highly effective in mitigating flight risk for noncitizens in immigration proceedings. *See, e.g., Hernandez v. Sessions*, 872 F.3d 976, 991 (9th Cir. 2017) (recognizing that Intensive Supervision Appearance Program (ISAP) "resulted in a 99% attendance rate at all EOIR hearings and a 95% attendance rate at final hearings"); *see also Doe v. Becerra*, No. 2:25-CV-00647-DJC-DMC, 2025 WL 1233883, at *12 (E.D. Cal. Apr. 29, 2025). Under BIA precedent, when an IJ finds an individual does not pose a danger, they should decide the amount of bond necessary to ensure the noncitizen's presence at future hearings and to ensure the noncitizen will report for removal if ordered to do so. *Matter of Urena*, 25 I&N Dec. 140 (BIA 2009).

15

Here, the IJ never meaningfully addressed alternatives to detention in making her decision to deny bond. Instead, her order flatly states, "there is no bond that will mitigate risk of flight." Exh. 1. The IJ erred by not discussing alternatives to detention or explaining why they could not reasonably assure Mr. Montesinos Olivar's presence in future proceedings. *See Hechavarria*, 358 F. Supp. 3d at 242 (holding bond hearing fell short of due process requirements where the IJ did not even say "one word about any alternative to detention" over the course of the hearing).

In making the decision to continue detention based on the small amount of flight risk Mr. Montesinos Olivar may theoretically pose, the IJ has falsely equated bond to a binary choice, where the individual must be either freely released or held indefinitely throughout the pendency of removal proceedings. But as the First Circuit and Supreme Court have recognized, "'the choice ... is not between imprisonment and the [noncitizen] "living at large"' in this country but 'between imprisonment and supervision under release conditions that may not be violated.'" *Hernandez-Lara*, 10 F.4th at 29, quoting *Zadvydas*, 533 U.S. at 696.

Imposing continued civil detention, which is potentially prolonged indefinitely, while failing to consider less restrictive alternatives to detention violates Mr. Montesinos Olivar's constitutional rights. Mr. Montesinos Olivar is currently detained at Plymouth County Correctional Facility, alongside criminal inmates with felony convictions, despite never having been convicted of a felony and having no criminal record for more than 10 years. *See Hernandez-Lara*, 10 F.4th at 28, quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2nd Cir. 2020) ("[Petitioner] was not 'detained'; he was, in fact, incarcerated under conditions indistinguishable from those imposed on criminal defendants sent to prison following

16

convictions for violent felonies and other serious crimes."). If a less restrictive alternative to detention is available, it must be considered.

Although the First Circuit has not directly addressed this issue, the Court has referred favorably to the requirement that IJs address alternatives to detention in custody redetermination hearings. In *Hernandez-Lara*, the court cited favorably to the Ninth Circuit's holding that IJs must "consider a noncitizen's financial circumstances and alternative conditions of release during section 1226(a) bond hearings." *Hernandez-Lara*, 10 F.4th at 45 (citing *Hernandez v. Sessions*, 872 F.3d at 990–91). In *Doe v. Tompkins*, the First Circuit affirmed a district court order that required IJs to "consider alternative methods to ensure the safety of the community and [the petitioner's] future appearances like GPS monitoring," declining to disturb that portion of the ruling only because neither party raised it on appeal. *Doe v. Tompkins,* No. 18-12266, 2019 WL 8437191, at *2 (D. Mass. Feb. 12, 2019), aff'd, 11 F.4th 1 (1st Cir. 2021).

In *Brito v. Garland*, the First Circuit, although vacating the district court decision on administrative exhaustion grounds, observed that "it is easy to see how conditions of release might shape an IJ's determination as to whether a noncitizen poses a flight risk or danger to the community," and "[i]f due process requires an IJ to consider alternatives to detention before making a determination about dangerousness or risk of flight, the IJs in the petitioners' cases might well have reached different decisions as to … whether to release the petitioners on bond." *Brito v. Garland*, 22 F.4th 240, 254-55 (1st Cir. 2021).

Accordingly, district courts in the First Circuit have found that an IJ's failure to consider alternatives to detention violates a noncitizen petitioner's due process rights. *See, e.g.*, *Costa v. McDonald*, No. 25-cv-13469-AK, 2026 WL 371198, at *3 (D. Mass. Feb. 10, 2026) (holding an IJ's "failure to consider whether alternatives to detention or other less restrictive means could

address the risks of danger posed by Petitioner to the community was constitutionally deficient"); *Higiro v. Nessinger*, No. 26-cv-00105-JJM-AEM, Doc. 8 at 16–18 (D.R.I. Mar. 13, 2026). In *Higiro*, the court explained that "[d]etention must bear a 'reasonable relation' to the purpose for which the individual is detained," and that two governmental interests legitimately advanced by immigration detention are (1) ensuring the noncitizen's appearance at future proceedings and (2) preventing danger to the community." *Id.* (quoting *Zadvydas*, 533 U.S. at 690).  Thus, requiring an IJ to consider alternatives to detention "helps to ensure that detention is not arbitrarily imposed and that it bears a reasonable relation to the Government's interests." *Id.* Moreover, the IJ must "consider whether alternatives to detention are warranted *before* making any determination as to flight risk or dangerousness."  *Higiro v. Nessinger*, No. 26-cv-105 (D.R.I. March 13, 2026), at 18.

In the present case, the IJ denied bond on the basis of flight risk without any consideration of whether alternatives to detention, such as electronic monitoring, in-person reporting to ICE, or other conditions of supervised release, could adequately mitigate any risk of flight. This failure to consider alternatives to detention violated Mr. Montesinos Olivar's due process rights, and Mr. Montesinos Olivar is entitled to relief.

**<u>CONCLUSION</u>**

WHEREFORE, Petitioner respectfully asks that the Court enforce its March 26, 2026 order and release him, as the government has not provided a bond hearing that complied with the requirements of the Court's order and the U.S. Constitution. In the alternative, Petitioner asks for the District Court, pursuant to its equitable powers, to release Mr. Montesinos Olivar on alternatives to detention such as GPS monitoring, hold its own bond hearing, or grant any other relief that the court sees fit.

18

Respectfully submitted,

*/s/ Rhonda A. Tietjen*
Rhonda A. Tietjen
BBO# 652346
Political Asylum/Immigration Representation
(PAIR) Project
98 N. Washington Street, Suite 106
Boston, MA 02114
(781) 964-6103; rtietjen@pairproject.org

*Pro bono counsel for Petitioner*

Dated: April 21, 2026

19